**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTINE L. LUFFEY,

                Defendant,

    vs.

CITY OF PITTSBURGH,

                Defendant.

Case No. 2:25-cv-001758

Honorable Patricia L. Dodge

**ANSWER OF DEFENDANT CITY OF PITTSBURGH TO PLAINTIFF'S
COMPLAINT WITH AFFIRMATIVE AND OTHER DEFENSES**

Defendant, City of Pittsburgh (hereinafter "Defendant" or the "City"), by and through its

undersigned counsel, answers Plaintiff, Christine L. Luffey's (hereinafter "Plaintiff") Complaint

as follows, with, as an initial matter, denying that there has been any discrimination against

Plaintiff, as her employment was not terminated and she chose to go onto the Chief's List, as well

as failed to follow requests that are reasonable and expected of all officers. Further, Defendant

objects that many of the allegations read as opinions, characterizations, use terms that are not

defined, and are unclear as to what they mean, and therefore they are denied as they do not consist

of "short and plain statement(s)" as required by Rule 8 of the Federal Rules of Civil Procedure.

Defendant further objects that in the name of "sex discrimination," Plaintiff is slamming a retired

Pittsburgh Police Lieutenant, Sandra McGuigan for allegations about her alleged beliefs, which

are speculative and conclusory, as well as untrue.

**I.    Introduction**

      1.     Defendant admits in part and denies in part the allegations in Paragraph 1 of the

Complaint. Defendant admits that the Western District of Pennsylvania entered a preliminary

injunction in *Commonwealth v. Flaherty*, 404 F. Supp. 1022, 1030-31 (W.D. Pa. 1975). Defendant

denies that this action, more than fifty (50) years ago, has any evidentiary value or implicates this

particular matter in any way. The averments contained in Paragraph 1 that are inconsistent with the information set forth in *Commonwealth v. Flaherty*, 404 F. Supp. 1022, 1030-31 (W.D. Pa.1975), or that consist of legal conclusions, to which no response is required, and the statistical allegations for which there are no citations and from which there are improper conclusions of the reason for any declines in the women being hired as police officers by Defendant, are denied.

2.      Neither admitted nor denied, as the terms "masculine culture," "command presence," "warrior mentality," "masculine norms," and "police militarization" are vague, unclear, and capable of many meanings. By way of further response, Defendant explicitly denies perpetuation of male favoritism or discrimination against female officers. The remaining averments contained in Paragraph 2 of the Complaint contain characterizations and opinions for which no response is required. To the extent a response is deemed required, the averments are denied.[1]

3.      Neither admitted nor denied, as the terms "masculine expectations," "dominant male culture," "command presence," or "gender stereotypes about 'weakness'" are vague, unclear, and capable of many meanings. By way of further response, Defendant explicitly denies perpetuation of male favoritism or discrimination against female officers. The remaining averments contained in Paragraph 3 of the Complaint contain characterizations and inexactness for which no response is required, i.e. which "police departments"? What is "warrior mentality" referring to? And what "accelerating trend of police militarization"? To the extent a response is deemed required, the averments are denied.

---

[1]     Admitted that Plaintiff has properly quoted the source cited in the first footnote of the Complaint. These generalizations contained in Paragraph 2, footnote "1" are denied to the extent they are being applied generally to the Pittsburgh Bureau of Police ("PBP").

4.      Admitted in part, denied in part. Defendant only admits that not all women in leadership positions discriminate against other women because of sex, and that most women do not engage in sex discrimination. Defendant denies that Lieutenant Sandra McGuigan engaged in discrimination on the basis of sex against female officers.  Defendant further denies that it has discriminated against Plaintiff.

5.      Admitted in part, denied in part. Defendant admits only that Plaintiff was a thirty (30)-year veteran at the time of her voluntary transition to the Chief's List. Defendant admits that Lieutenant McGuigan referred to Plaintiff's position with the PBP as useless, and Lieutenant McGuigan often observed Plaintiff failing to follow standard officer protocol and failing to participate in standard officer tasks such as responding to 911 calls. Defendant explicitly denies that Lieutenant McGuigan referred to Plaintiff herself as useless." Defendant denies that Lieutenant McGuigan referred to any officers, including Plaintiff, as a "whore," "drunken slut," or a "waste of a body."

6.      Neither admitted nor denied, as the terms "gendered notion," "disdain," and "insufficiently masculine" are vague, unclear, and capable of many meanings. By way of further response, after reasonable investigation, Defendant is not aware of any statements described in Paragraph 6 of the Complaint. The remaining averments contained in Paragraph 6 of the Complaint contain either speculative characterizations or legal conclusions to which no response is required. To the extent a response is deemed required, it is denied. Further, allegations of a retired police officer attributing "sex-based discrimination" based on alleged "jealousy of women who were younger, smarter or prettier" is not alleged for any proper purpose, is speculative, conclusory, irrelevant, and of lesser value than hearsay.

## II.     Parties

7.      Admitted upon information and belief.

8.      Admitted.

## III.    Jurisdiction, Venue, and Exhaustion

9.      The averments contained in Paragraph 9 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied as to the Title VII claims and the Pennsylvania Human Relations Act ("PHRA") claims having any merit, but admitted that this Court has jurisdiction due to the meritless federal law claim.

10.     Admitted.

11.     Admitted.

## IV.    Facts Allegedly Giving Rise to This Action

### A.    Part A

12.     Defendant admits only that Plaintiff joined the Pittsburgh Bureau of Police ("PBP") on July 5, 1993, served until her voluntary transition to the Chief's List (an option for officers who want to use their accumulated Paid Time Off ("PTO") prior to retirement) on April 9, 2024, and is a more than thirty (30)-year veteran of the PBP. Defendant explicitly denies constructively discharging Plaintiff, as she voluntarily transferred to the Chief's List on or around April 9, 2024, and voluntarily retired on or around July 16, 2025. The remaining averments in Paragraph 12 of the Complaint are legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

13.     Defendant admits only that Plaintiff worked as a Community Relations Officer from the Zone 3 police station and developed a generally positive external reputation as an officer engaged in the community and animal welfare. Internally, Plaintiff received discipline for failure to discharge her duties, namely, for recording an altercation between several juveniles rather than intervening, as was her duty. Defendant explicitly denies that Plaintiff was constructively

discharged, as she voluntarily transferred to the Chief's List on or around April 9, 2024, and voluntarily retired on or around July 16, 2025.

14.     Defendant admits in part and denies in part the allegations in Paragraph 14 of the Complaint. Defendant admits that Plaintiff engaged in animal advocacy work that has been noted in publicly available articles from news sources, and those articles speak for themselves. Defendant cannot admit or deny Plaintiff's personal passions or opinions expressed in news sources, and therefore, they are denied.

15.     Admitted upon information and belief.

16.     Admitted upon information and belief.

17.     Denied as stated. The PBP allowed Plaintiff to focus on animal cruelty as long as she could balance the project with her primary policing duties. However, Plaintiff often failed to engage with her duties, including those as simple as appearing for roll call, which is required for all officers. Further, upon information and belief, Plaintiff does not have any specialized certification or degree in animal welfare protection. Defendant admits that Plaintiff handled numerous cases involving animal neglect, that she partnered with Defendant's Humane Society, and may have been referred to by some as the "dog cop."

18.     Admitted upon information and belief.

19.     Admitted upon information and belief.

20.     Admitted upon information and belief.

21.     Admitted upon information and belief.

22.     Admitted upon information and belief.

23.     Admitted upon information and belief.

24.     Admitted upon information and belief.

25.     Denied as stated. At the time of Plaintiff's employment and presently, the PBP did not have a need for a specialized animal control unit. Rather, the Humane Society in Pittsburgh employs highly trained and specialized municipal police officers who handle animal abuse and neglect cases as their sole job duty. Further, the PBP allowed Plaintiff to focus on animal cruelty as long as she could balance the project with her primary policing duties. However, Plaintiff often failed to engage with her duties, including those as simple as appearing for roll call, which is required for all officers. Defendant admits that Plaintiff advocated for a separate animal welfare unit, that no formal animal crimes unit was established, and that a councilmember described her as "one of the most well-respected police officers that we have."

26.     Admitted upon information and belief.

27.     Defendant admits that Plaintiff received a Lifetime Service to Animals Award in 2023, that she was referred to as "Pittsburgh's best friend in animal law enforcement," and that she received informal praise from community members. Defendant can neither admit nor deny whether she was regarded as a compassionate officer who went "above and beyond," as Plaintiff has not cited the source of the quote.

28.     Admitted upon information and belief.

29.     Denied as stated. Plaintiff carved a niche for animal welfare within the PBP and was engaged in the Pittsburgh community, which was appreciated by residents, and she has delivered Thanksgiving dinners to those in need. The remaining averments contained in Paragraph 29 of the Complaint are characterizations to which no response is required. To the extent a response is deemed required, it is denied.

**B.      Part B**

30.     Admitted upon information and belief.

31.    Denied. By way of further response, the terms "gendered view" and "real police work" are vague, unclear, and capable of many meanings. Notwithstanding, Defendant explicitly denies that Commander Abraham and/or Lieutenant McGuigan engaged in any discriminatory behavior and denies that Commander Abraham and Lieutenant McGuigan conspired to make Plaintiff's life miserable.

32.    Admitted in part, denied in part. Defendant admits only that Commander Abraham had limited authority to discipline Plaintiff, specifically for her failure to intervene in a July 4, 2023, incident, in accordance with recommendations and approval from Chief Scirotto. Otherwise, Commander Abraham was not Plaintiff's direct supervisor. Further, at this time, Lieutenant McGuigan was not Plaintiff's supervisor and did not have the power to effect significant changes in Plaintiff's employment.

33.    Admitted in part, denied in part. Defendant admits that, on October 4, 2023, Chief Scirotto delegated Plaintiff's discipline to Commander Abraham, specifically for Plaintiff's failure to intervene in a July 4, 2023, incident while partnered with Officer David Shifren. Defendant further admits that on October 5, 2023, Commander Abraham emailed Plaintiff, with Lieutenant McGuigan copied, to inform her of potential discipline for her failure to intervene. Defendant explicitly denies that the email was a method of "fir[ing] their first shot" at Plaintiff. The remaining allegations are denied. Lieutenant McGuigan was merely copied on the correspondence because a witness to the incident initially reported Plaintiff's failure to intervene to Lieutenant McGuigan.

34.    Denied as stated. Commander Abraham, based on factual reports, informed Plaintiff of her failure to intervene on July 4, 2023, and requested that she file a special report in response. Lieutenant McGuigan was merely copied on the correspondence.

35.     Admitted in part, denied in part. Defendant admits Plaintiff's representation of her special report. Defendant denies that her representation is an accurate explanation of her failure to intervene on July 4, 2023, especially given that use of personal cell phones for identification is unorthodox in the PBP. Further, intervention into the altercation was required at that time.

36.     Admitted in part, denied in part. Defendant admits Plaintiff's representation of her special report. Defendant denies that her representation is an accurate explanation of her failure to intervene on July 4, 2023. By way of further response, Plaintiff did not respond to a specific juvenile altercation on July 4, 2023, which led to her discipline for failure to intervene.

37.     Denied as stated. On October 12, 2023, Commander Abraham and Lieutenant McGuigan met with Plaintiff to discuss her failure to intervene. Lieutenant McGuigan observed the meeting but did not speak. Commander Abraham specifically discussed PBP policy, which states that "The lack of any of the following qualities will constitute evidence of incompetence: courage, honesty, sound judgment, emotional stability, industry, alertness, decisiveness, power to observe, initiative, intelligence, technical skills, tactical skills and the ability to get along with people." Standards of Conduct 16-01, Section 3.12.2, page 4. In her failure to intervene, Commander Abraham explained that Plaintiff failed to demonstrate courage, sound judgment, alertness, decisiveness, and/or the power to observe, in clear violation of the Standards of Conduct. Further, Commander Abraham explained to Plaintiff that, as is standard practice for officers, she needed to develop a plan for execution of search warrants, given her history of executing search warrants without approval or supervisory knowledge. Defendant explicitly denies that Commander Abraham and/or Lieutenant McGuigan "yelled" at Plaintiff, told Plaintiff that she was "incompetent and a coward," told Plaintiff that she "would be closely watching moving forward,"

or told Plaintiff that she would need specialized pre-clearance before responding to animal welfare calls.

38.     Admitted in part, denied in part. Defendant admits that Commander Abraham explained to Plaintiff that, despite her past failure to do so in direct contradiction to PBP policy, she was required to attend roll call. Defendant denies that Commander Abraham ordered Plaintiff to prepare a proposed agenda of her work activities one (1) week in advance, subject to his approval. By way of further response, during her counseling for her failure to intervene, Commander Abraham explained to Plaintiff that, as is standard practice for officers, she needed to develop a plan for execution of search warrants, given her history of executing search warrants without approval or supervisory knowledge.

39.     Denied as stated. Commander Abraham ordered Plaintiff to engage in remedial training. Lieutenant McGuigan did not issue discipline against Plaintiff and did not verbally participate in the October 12, 2023, meeting.

40.     Admitted. Commander Abraham and Lieutenant McGuigan did not speak to Officer Shifren about the incident because neither had any supervisory control over Officer Shifren, as he worked in a different zone. Commander Abraham and Lieutenant McGuigan were, at all times, without any authority to discipline Officer Shifren.

41.     Denied. By way of further response, Plaintiff and Commander Abraham rarely crossed paths, but Commander Abraham acknowledged Plaintiff when they did.

42.     Defendant can neither admit nor deny what Plaintiff heard from other officers. However, Defendant explicitly denies Commander Abraham and Lieutenant McGuigan placing a target on Plaintiff's back in an effort to force her to retire.

43.    Defendant can neither admit nor deny what Plaintiff heard from other officers. Defendant denies the remaining averments in Paragraph 43 of the Complaint. By way of further response, on August 9, 2023, Plaintiff learned that the Community Resource Office would soon be headquartered in Zone 1, not Zone 3, where she had been located at the time. In reality, the entire PBP was experiencing structural shifts; specifically, Community Resource Officers needed to be relocated due to budgetary restrictions and personnel needs. Notwithstanding the needs of the team, on August 10, 2023, Plaintiff requested that her office remain in Zone 3. Her request was approved. Further, Lieutenant McGuigan was without authority to dictate the location of Plaintiff's office, as she was not her direct supervisor. Finally, at all relevant times, Plaintiff was the only officer in Zone 3 who had her own office. All other officers of Plaintiff's rank worked together in one (1) room. Plaintiff's office was offered to a male Lieutenant who had recently been promoted to Executive Officer to Commander Abraham. Plaintiff did not have this status.

44.    Defendant can neither admit nor deny what Plaintiff heard from other officers. Defendant explicitly denies that Commander Abraham and/or Lieutenant McGuigan planned to force Plaintiff into a small and noisy area in the back of the station. Further, at all relevant times, Plaintiff was the only officer in Zone 3 who had her own office. All other officers of Plaintiff's rank worked together in one (1) room.

45.    Defendant can neither admit nor deny what Plaintiff heard from other officers. Defendant explicitly denies that Commander Abraham and/or Lieutenant McGuigan referred to Plaintiff as serving "no purpose," and "a waste of a body." Defendant further denies that Commander Abraham referred to Plaintiff as "useless." Defendant admits that Lieutenant McGuigan referred to Plaintiff's position with the PBP as useless, and Lieutenant McGuigan often observed Plaintiff failing to follow standard officer protocol and failing to participate in standard

officer tasks such as responding to 911 calls. Defendant explicitly denies that Lieutenant McGuigan referred to Plaintiff herself as useless.

46.     Denied as stated. Plaintiff did not have access to patrol vehicle because she did not attend roll call and because all serviceable vehicles were in use. Often, when Plaintiff arrived to work, well after roll call, her fellow Community Resource Officers were already using the community vehicle. Further, unlike her fellow officers, Plaintiff did not want to respond to 911 calls. Therefore, she was not given priority for access to another vehicle. Defendant explicitly denies that male officers had full access to patrol vehicles and that Plaintiff did not receive one because of her sex. Defendant also denies that Commander Abraham and/or Lieutenant McGuigan deprived Plaintiff of the use of a patrol vehicle.

47.     Denied. By way of further response, the terms "investigative support" and "administrative requirements" are vague, unclear, and capable of many meanings. To the extent Plaintiff is referring to her requirement to attend roll call, "*All* officers are required to attend, dressed and prepared to respond to calls, unless excused by the Shift Commander, or other supervisor." Roll Call 40-01, Section 3.0, page 1 (emphasis added). Defendant explicitly denies that Plaintiff was held to a higher standard than other officers. Plaintiff was required to attend roll call. Similarly, any other requirements placed on Plaintiff were standard practices to which Plaintiff should have been abiding.

48.     Denied. By way of further response, during her counseling for her failure to intervene, Commander Abraham explained to Plaintiff that, as is standard practice for officers, she needed to develop a plan for execution of search warrants, given her history of executing search warrants without approval or supervisory knowledge. Further, Commander Abraham explained to Plaintiff that, despite her past failure to do so in direct contradiction to PBP policy, she was

required to attend roll call. Lieutenant McGuigan was not in control of Plaintiff's discipline. Defendant explicitly denies that no male officer in Zone 3 was required to develop a plan of execution for search warrants. Rather, all officers, prior to executing search warrants, were required to submit an operational plan to their supervisors to ensure knowledge of their location and the availability of backup.

49.    Denied as stated. Defendant admits that Plaintiff spoke to Defendant's Department of Human Resources ("DHR") on or around December 15, 2023, and alleged that Lieutenant McGuigan and Commander Abraham created a hostile work environment. Upon reasonable investigation, Defendant is without sufficient information to either admit or deny Plaintiff's submission of a written report in conjunction with her oral DHR complaint.

50.    Denied.

51.    Denied as stated. By way of further response, upon information and belief, on or around February 23, 2024, Plaintiff sought to take Director's Leave, which was unpaid leave. Chief Scirotto, in an effort to accommodate Plaintiff, suggested instead that Plaintiff "burn time" by taking her accrued paid time off. This would allow Plaintiff to consider her options without permanently setting a date to return to work. Such circumstances are rare in the PBP and Plaintiff's allowance to take this form of informal leave demonstrates that the PBP bent over backwards to ensure her comfort.

52.    Denied as stated. On February 28, 2024, the DHR sustained Plaintiff's allegations that Lieutenant McGuigan violated the Bureau of Police Order No. 20-01, No Discrimination/No Harassment/No Retaliation Policy. The DHR determined that Plaintiff's allegations as to Commander Abraham were unfounded relative to the same policy.

53.     Denied as stated. Defendant closed the investigation upon Chief Scirotto's review of the DHR findings and his determination that discipline against Lieutenant McGuigan was not warranted, given that her sustained finding was based on hearsay and the opinions of third parties.

54.     Denied as stated. Defendant closed the investigation upon Chief Scirotto's review of the DHR findings and his determination that discipline against Lieutenant McGuigan was not warranted, given that her sustained finding was based on hearsay and the opinions of third parties. By way of further response, Defendant determined there was no reason to take action against Lieutenant McGuigan.

55.     Denied as stated. Defendant did not discipline Lieutenant McGuigan for her sustained finding, given that the finding was based on hearsay and the opinions of third parties. Defendant admits that Plaintiff was not informed of the results of her complaint. Defendant explicitly denies that Plaintiff was forced to endure a hostile work environment.

56.     Denied. By way of further response, neither Commander Abraham nor Lieutenant McGuigan worked "hand-in-hand" to create a hostile work environment. Accordingly, DHR explicitly found Plaintiff's allegations as to Commander Abraham's violation of Defendant's anti-harassment policy to be unfounded. In sum, Chief Scirotto found no hostile work environment and consequently, no discipline was warranted.

57.     Admitted upon information and belief.

58.     Denied. By way of further response, Plaintiff and Director Schmidt discussed Plaintiff's displeasure with the PBP at that time. She did not discuss her concerns of discrimination on the basis of her sex. In response, Director Schmidt objectively discussed Plaintiff's options for the future, including transferring to a different zone, remaining in Zone 3, taking time off, or transitioning to retirement.

59.     Denied as stated. Plaintiff advised that she would contemplate her options and informed Director Schmidt that she would connect with him once she made a decision. She never called him back.

60.     Denied as stated. By way of further response, Plaintiff received emails from Defendant on or around April 1, 2024, because she continuously failed to appear for work.

61.     Denied.

62.     Admitted upon information and belief.

63.     Denied.

64.     Denied. In early April 2024, after Plaintiff had been on informal paid leave for more than one (1) month, Chief Scirotto presented numerous options to Plaintiff, including remaining in Zone 3, transferring to another Zone, or transferring to the Chief's List. The only caveat was that Plaintiff could not displace an officer in their current roles to take a role she prefers. Chief Scirotto did not force or convince Plaintiff to take any one option. Further, to be clear, Defendant denies that Chief Scirotto presented these options because Plaintiff complained of a hostile work environment. Rather, Plaintiff cited personality differences between her and Lieutenant McGuigan that were entirely unrelated to sex discrimination.

65.     Admitted upon information and belief.

66.     Denied. Plaintiff voluntarily opted to transition to the Chief's List after Chief Scirotto presented her with several options. Further, upon her transition to the Chief's List, Plaintiff had the option to return to her role, in whatever capacity, when she felt comfortable. Indeed, Chief Scirotto stated, "Once you have determined that you are prepared to return to work, we will provide you with the opportunity to select your new duty location and shift, allowing for a smoother

transition back into your role." Plaintiff never requested to return to work and ultimately retired in July 2025.

67.    Denied.

## Count I – Title VII and PHRA

### Disparate Treatment

68.    Defendant incorporates the responses above as though set forth in full herein.

69.    The averments contained in Paragraph 69 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

70.    The averments contained in Paragraph 70 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

71.    The averments contained in Paragraph 71 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

72.    The averments contained in Paragraph 72 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

WHEREFORE, Defendant denies that Plaintiff is entitled to any judgment or damage award in her favor.

## Count II – Title VII and PHRA

### Hostile Work Environment and Tangible Employment Action

73.    Defendant incorporates the responses above as though set forth in full herein.

74.      The averments contained in Paragraph 74 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

75.      The averments contained in Paragraph 75 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

76.      The averments contained in Paragraph 76 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

77.      The averments contained in Paragraph 77 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

78.      The averments contained in Paragraph 78 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

79.      The averments contained in Paragraph 79 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

WHEREFORE, Defendant denies that Plaintiff is entitled to any judgment or damage award in her favor.


## Count III – Title VII and PHRA

## Constructive Discharge

80.      Defendant incorporates the responses above as though set forth in full herein.

81.    Denied. By way of further response, Plaintiff clearly did not intend on working through 2029, as she voluntarily transitioned to the Chief's List in April 2024 and voluntarily retired in July 2025.

82.    Denied as stated. On February 28, 2024, the DHR sustained Plaintiff's allegations that Lieutenant McGuigan violated the Bureau of Police Order No. 20-01, No Discrimination/No Harassment/No Retaliation Policy. The DHR determined Plaintiff's allegations as to Commander Abraham were unfounded relative to the same policy. Defendant subsequently closed the investigation upon Chief Scirotto's review of the DHR findings and his determination that discipline against Lieutenant McGuigan was not warranted, given that her sustained finding was based on hearsay and the opinions of third parties.

83.    Denied. By way of further response, in Plaintiff's conversation with Director Schmidt, he presented Plaintiff with her options, including retirement.

84.    Denied as stated. Plaintiff received emails from Defendant because she continuously failed to appear for work, despite not being on approved leave at that time.

85.    Admitted in part, denied in part. Defendant admits only that her office was offered to a male officer during a time of transition and restructuring. Defendant denies that any conditions that Plaintiff experienced were "objectively intolerable." Defendant explicitly denies that a male officer was offered Plaintiff's office because of sex discrimination. Defendant further denies that Lieutenant McGuigan denied Plaintiff access to a patrol vehicle for discriminatory reasons, that she would be forced to work in a noisy room, that her reports were unapproved, that overtime was singled out, and that Plaintiff had unique pre-approval requirements.

86.    Denied. While Defendant can neither admit nor deny whether Plaintiff felt humiliated and/or intimidated, Defendant denies the "atmosphere was humiliating or

intimidating." Defendant further denies that Commander Abraham referred to Plaintiff as "useless." Defendant admits that Lieutenant McGuigan referred to Plaintiff's position with the PBP as useless, and Lieutenant McGuigan often observed Plaintiff failing to follow standard officer protocol and failing to participate in standard officer tasks such as responding to 911 calls. Defendant explicitly denies that Lieutenant McGuigan referred to Plaintiff herself as useless. Defendant further denies that Lieutenant McGuigan and/or Commander Abraham referred to Plaintiff as a "waste of a police officer," of "no purpose," and to her animal welfare and community work as meaningless.

87.    Denied. By way of further response, Defendant can neither admit nor deny Plaintiff's interpretation of Lieutenant McGuigan's alleged actions, but denies that her interpretation is in any way "reasonable." Defendant explicitly denies that Lieutenant McGuigan ever confronted Plaintiff with menacing stares while placing her hand on her service weapon.

88.    Denied as stated. Leadership acknowledged that Plaintiff was unhappy in Zone 3 and assisted Plaintiff in finding an alternative to working in Zone 3, including transferring to another zone or transitioning to retirement. Further, Chief Scirotto reviewed the results of Plaintiff's complaint and determined that discipline against Lieutenant McGuigan was not warranted. Finally, Defendant specifically denies that Plaintiff was ever usurped of the basic tools of her job.

89.    Defendant explicitly denies that Lieutenant McGuigan and/or Commander Abraham created unlawful conditions and that Defendant refused to fix these conditions and encouraged Plaintiff to retire. The remaining averments contained in Paragraph 89 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

90.     The averments contained in Paragraph 90 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

91.     The averments contained in Paragraph 91 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

92.     The averments contained in Paragraph 92 of the Complaint contain legal conclusions to which no response is required. To the extent a response is deemed required, it is denied.

WHEREFORE, Defendant denies that Plaintiff is entitled to any judgment or damage award in her favor.

## ADDITIONAL DEFENSES

Defendant avers the following Additional Defenses to the Complaint, but does not assume the burden of proof on any defenses except as required by applicable law with respect to the particular defenses asserted. Defendant reserves the right to assert other defenses, and to otherwise supplement its defenses, upon discovery of facts or evidence rendering such action appropriate.

93.     Defendant incorporates its responses to paragraphs 1 through 92 of the Complaint as if set forth fully herein.

94.     The Complaint has failed to state a claim upon which relief may be granted as she was not terminated, and she was offered an opportunity to transition to another Zone to work, and she could have continued to perform work at Zone 3.

95.     Defendant engaged in appropriate review of the claims brought by Plaintiff and ultimately, Defendant found that there was no discrimination based on sex or otherwise, and Defendant's actions were for legitimate, non-discriminatory reasons.

96.     Plaintiff cannot maintain a claim against Defendant because Defendant did not discriminate against Plaintiff; rather, if anything, Plaintiff was treated more favorably than other officers and when there were increasing needs and decreasing officers, and Defendant was simply requiring her to abide by reasonable standards to which all officers are held.

97.     Plaintiff ignores the applicable standards for all police officers and the expectations for her working out of Zone 3, even if as a community officer.

98.     Plaintiff cannot maintain claims based upon hearsay, speculation, or misinterpretations of intentions.

99.     Plaintiff cannot maintain a claim against Defendant for hostile work environment because it promptly investigated complaints raised by Plaintiff and determined that no disciplinary action was required.

100.    Other than the allegations underlying the investigation referenced in the foregoing paragraph, Plaintiff never reported any allegations of discrimination, harassment, or retaliation to Defendant, despite Defendant's policies encouraging reporting and that resulted in prompt investigations and appropriate actions being taken.

101.    Plaintiff was not terminated and the limited disciplinary actions taken against her were for legitimate, non-discriminatory reasons, which were discussed with her.

102.    Plaintiff has not incurred any actual injury or damages.

103.    Plaintiff failed to mitigate her damages through transferring to a new Zone or seeking new employment.

104.    Plaintiff's claims were brought in bad faith, are frivolous, unreasonable, and without foundation; therefore, Defendant is entitled to recovery of its attorney's fees and costs.

105.    Plaintiff is not entitled to compensatory damages.

106.    At all times relevant, Defendant acted reasonably and in good faith.

107.    Plaintiff fails to meet the standard for and is not entitled to punitive damages.

108.    Plaintiff's claims and any damages claimed thereunder are subject to set-off.

109.    Defendant reserves the right to assert additional defenses.

WHEREFORE, Defendant denies committing any violation of law, and that Plaintiff is entitled to any relief, requested or otherwise. Accordingly, Defendant respectfully requests judgment in its favor and against Plaintiff, that the Complaint be dismissed with prejudice, that Plaintiff take nothing by way of the Complaint, costs of this action, and all other relief deemed necessary and proper by the Court.

Date: January 12, 2026                    **BUCHANAN INGERSOLL & ROONEY PC**

By: _/s/ Jaime S. Tuite, Esq._
Jaime S. Tuite, Esq. (PA ID No. 87566)
Hannah B. MacKay, Esq. (PA ID No. 330247)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 562-8800 (telephone)
(412) 562-1041 (facsimile)
jaime.tuite@bipc.com
hannah.mackay@bipc.com

*Attorneys for Defendant City of Pittsburgh*